### In re ELK VALLEY COAL MINING CO.

#### (District Court, W. D. Kentucky. April 18, 1914.)

1. BANKRUPTCY (§ 223*)—FEES OF REFEREE—COMMISSIONS.

Where the property of a bankrupt was purchased at trustee's sale by a lienholder whose claim exceeded the purchase price, and who was required by order of court to give a bond for the payment only of such sum as should be necessary to pay prior liens and the costs of administration, the referee is not entitled to commission on the remainder of the price bid, which was not disbursed by the trustee even in form.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 888–894; Dec. Dig. § 223.*]

2. BANKRUPTCY (§ 223*)—COMPENSATION OF REFEREE—SPECIAL ALLOWANCES.

Under General Orders in Bankruptcy XXXV, cl. 2 (89 Fed. xiii, 32 C. C. C. A. xxxiv), a referee is entitled only to necessary expenses incurred by him in publishing or mailing notices, in traveling, in perpetuating testimony, or in the performance of other duties under the act and allowed by special order of the court. He is not entitled to the allowance of a per diem for his services when away from home, to traveling expenses of a clerk, nor to clerk or stenographer's hire, unless the necessity therefor is shown.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 888–894; Dec. Dig. § 223.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. In the matter of the Elk Valley Coal Mining Company, bankrupt. On petition of Sallie J. Thompson to review order of referee. Reversed.

See, also, 210 Fed. 386.

The Referee, pro se.

J. W. Linton, of Russellville, Ky., for respondents.

EVANS, District Judge. Mrs. Sallie J. Thompson had a lien upon most of the bankrupt's estate and proved her very large claim as one thereby secured. At the sale of the property she bid upon it some $80,000, but, in view of her lien on the property purchased, she was required to and did only give a bond in the following terms, to wit:

"In the District Court of the United States for the Western District of Kentucky.

"In the Matter of Elk Valley Coal Mining Company, Bankrupt.

"In Bankruptcy.

"Bond for Purchase Money.

"Six months after date, we, Sallie J. Thompson, principal, H. C. Thompson, C. A. Rogers, L. N. Birk, and J. M. Thompson, sureties, jointly and severally promise to pay John Craig Brown, trustee of the bankrupt estate in the above-entitled cause, the sum of ten thousand dollars ($10,000.00), with interest thereon from date hereof at the rate of six per cent. per annum until paid; it being the amount fixed by order of the court in the above-styled cause to meet the payment of all legal taxable cost in said cause and meet the payment of all prior lien claims in said matter, and also being payment of part of the purchase money for the Elk Valley Coal Mining Company property, known as Elk Valley mine and Diamond Block mine and all personal property connected therewith and office furniture and fixtures in bankrupt's office in Drakesboro, Ky., this day sold by the said John Craig Brown, trustee aforesaid, by virtue of an order of the court in the said cause granted on September the 30th, 1912, and of which property at said sale the said Sallie J. Thompson became the purchaser. This bond is to have the force and effect of a judgment with a lien reserved upon all of said property to secure the payment of this bond.

"Witness our hands this the 18th day of November, 1912:

"Sallie J. Thompson,
"By J. M. Thompson,
"H. C. Thompson,
C. A. Rogers,
L. N. Birk,
J. M. Thompson."

"Witnesses:
"E. A. Taylor,
"Walker Wilkins.

At that time there appeared to be no probability that any greater sum than $10,000 would be needed to pay claims prior to hers, and the result showed that such was indeed the fact. However, after the trustee was appointed, he filed a petition before the referee asking that the principal and sureties on the bond be ruled to pay to him the entire $10,000, and interest, except the sum of $822, paid thereon on October 5, 1913, and the further sum of $300, paid thereon on October 20, 1913. A show-cause order was made, and to it Mrs. Thompson and her sureties filed a response. The referee held the response to be insufficient, and made the rule absolute. Thus the case is again before us, but all questions except those pertaining to the claims made by the referee for his compensation and those made by the trustee for his

have probably been settled, and the present opinion will be confined to the claims of the referee alone, leaving all other questions and any claim of the trustee open to be disposed of at a later time.

The referee's claim as made out by him is as. follows:

In the District Court of the United States for the Western District of Kentucky.

In the Matter of Elk Valley Coal Mining Company, Bankrupt.

In Bankruptcy.

Statement of Referee's Cost and Commissions.

| | | |
|---|---|---:|
| July 22, 1912. | Railroad fare from Elkton to Central City and return............................................$ | 4 60 |
| " " " | Hotel fare......................................... | 1 50 |
| Aug. 23, " | Railroad fare for self and clerk from Elkton to Central City and return............................ | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| Aug. 30, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| Sept. 12, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| Sept. 29, " | Carriage from Elkton to Russellville.............. | 3 00 |
| " " " | Railroad fare for self and clerk from Russellville to Central City................................... | 2 20 |
| " " " | Hotel fare for self and clerk...................... | 2 00 |
| " 30, " | " " " " " " ...................... | 3 00 |
| " " " | Railroad fare for self and clerk from Central City to Elkton...................................... | 4 60 |
| Oct. 11, " | Railroad fare for self and clerk from Elkton to Russellville and return.......................... | 4 80 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| " 26, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| " 29, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| Nov. 14, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| " 30, " | Carriage from Elkton to Russellville and return.... | 3 00 |
| " " " | Hotel fare....................................... | 50 |
| " " " | Livery feed in Russellville........................ | 35 |
| Dec. 12, " | Railroad fare for self and clerk from Elkton to Central City and return......................... | 9 20 |
| " " " | Hotel fare for self and clerk...................... | 3 00 |
| Sept. 24, 1913. | Railroad fare from Elkton to Central City and return.......................................... | 4 60 |
| " " " | Hotel fare....................................... | 2 50 |
| | Clerk hire for 10 days at $10.00 per day............ | 100 00 |
| | Stenographer hire................................. | 150 00 |
| | Out of town 13 days at $10.00 per day............. | 130 00 |
| | | $ 505 05 |
| | Mailing notices................................... | 505 25 |
| | Filing claims..................................... | 39 75 |
| | Commissions .................................... | 822 40 |
| | | $1,872 45 |

In the District Court of the United States for the Western District of Kentucky.

In the Matter of Elk Valley Coal Mining Company, Bankrupt.

In Bankruptcy.

| | | | | |
|---|---|---|---|---|
| Mailing 241 notices first creditors' meeting at 25c per notice......$ | | | | 60 25 |
| "    "    "    second    "    "    "    "    "    "    ...... | | | | 60 25 |
| "    "    "    petition for sale of property "    "    "    ...... | | | | 60 25 |
| "    "    "    of sale, for sale of property at 25c per notice.... | | | | 60 25 |
| "    "    "    report of trustee of sale...................... | | | | 60 25 |
| "    "    "    creditors' meeting to elect trustee................ | | | | 60 25 |
| "    "    "    "    "    Sept. 24, 1913.........:........ | | | | 60 25 |
| "    93    "    on exceptions to labor claims................... | | | | 23 25 |
| "    241    "    final meeting of creditors...................... | | | | 60 25 |

$ 505 25

Filing 159 claims at 25c per claim............................... 39 75
1% commissions on $82,240.00.................................. 822 40

$1,367 40

As will be seen, he claims commissions on the sum of $82,240, and shows that the trustee has paid to him the $822 collected on that bond, and also has paid to himself or his predecessor $300 out of money so collected. One trustee, however, has died, and another has been appointed in his stead, and, as we have stated, this opinion will deal only with the referee's claim, and will leave open such claims, if any, as may be made on behalf of either trustee.

Section 40a of the Bankruptcy Act as amended is as. follows:

"Referees shall receive as full compensation for their services, payable after they are rendered, a fee of fifteen dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and twenty-five cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them one per centum commissions on all moneys disbursed to creditors by the trustee, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition." Act Feb. 5, 1903, c. 487, § 9, 32 Stat. 779 (U. S. Comp. St. Supp. 1911, p. 1500).

Section 72 of the act is in this language:

"That neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this act."

General Order in Bankruptcy XXXV, cl. 2 (89 Fed. xiii, 32 C. C. A. xxxiv), is as follows:

"The compensation of referees, prescribed by the act, shall be in full compensation for all services performed by them under the act, or under these general orders; but shall not include expenses necessarily incurred by them in publishing or mailing notices, in traveling, or in perpetuating testimony, or other expenses necessarily incurred in the performance of their duties under the act and allowed by special order of the judge."

These provisions are very explicit, but we may note certain authorities which bear instructively upon them: 1 Loveland, § 98, and cases cited; Collier (9th Ed.) pp. 617, 1085, 1086, and cases cited.

[1] It will be recalled that Mrs. Thompson was required to give bond only in the sum of $10,000, with interest, and that the bond itself stipulated that that "was the amount fixed by order of the court in the above-styled cause to meet the payment of all legal taxable costs in said cause and meet the payment of all prior lien claims in said matter." The order referred to must have been based upon the obvious proposition that Mrs. Thompson was entitled to all the purchase money to be derived from the sale of the bankrupt's property by virtue of her lien thereon, except prior claims made up mainly of the costs of this proceeding, taxes due, labor claims, and certain costs and expenses of administration incurred in an effort to operate the property by the trustee under the direction of the court.

Under these circumstances, it would seem that there was no fair need for Mrs. Thompson to pay money to the trustee merely to put it in a position to be tolled for fees by the officers of the court. The money derived from the sale of the property outside of the $10,000 was not only due by her, but was due to her, and need not be collected or disbursed. Hence we conclude that only the $10,000, or such parts of it as were needed, was money to be "disbursed" by the trustee, within the proper sense of that word as used in section 40a of the act. The remaining part of the purchase money was to be retained by Mrs. Thompson, to whom it was going as the holder of the lien on the property for which she had bid at the sale. In respect to that large amount the matter was merely formal, and there was no receipt or disbursement of money by the trustee, even in form, nor was any necessary.

[2] Coming now to the various items of the referee's claim in detail, we have concluded that he is in strictness entitled only to such commissions on the $10,000 as section 40a authorizes. He is, of course, also entitled to $15, the fixed or filing fee, and to the 25 cents for each of the 159 claims proved against the estate, this amounting to $39.75.

We think the referee is also entitled to his own traveling expenses whenever it was necessary for him to travel to any place other than his own office or home in order to transact business in connection with the bankrupt's estate, but, unless something more is shown, he is not entitled to the traveling expenses of a clerk.

The record shows no state of fact which would support the referee's claim for clerk hire, and the same considerations apply to his claim for stenographer's hire, and certainly the record shows nothing to support the referee's claim of $10 per day for being "out of town." We are not disposed to make a special order allowing any of these items. While the referee's traveling expenses may be charged for and paid, he cannot charge extra for his own work merely because it is done away from home; the labor being no greater at one place than another. Great abuses might result unless the restrictions imposed by the act and by the General Orders in Bankruptcy are enforced.

As to the various items of the referee's account, amounting in the aggregate to $505.25, for "mailing" various notices to creditors upon various subjects, we have concluded that no one of these items is sustainable upon the basis of charging a "fee" of 25 cents for mailing each

notice. The utmost that can be allowed for this service is the amount of proper *"expenses"* incurred in mailing the notices as contemplated in General Order XXXV, cl. 2. The amount of such proper expenses would have to be shown by proof, but none appears in the record.

We do not understand that Mrs. Thompson and her sureties seriously object to the payment to the referee of the $822, if that is to be in full of all his claims. If we are right in this supposition, we need not ascertain at this time the exact amount at which the referee's compensation should be fixed under the views we have expressed, but, if we are mistaken in our supposition, then, if counsel cannot agree upon the correct result to be worked out, we will go over it with them at some convenient time. And it may be that further testimony will be necessary, and if so, reasonable time can be given for taking it.

It results that the order of the referee sought to be reviewed, so far as it made the rule absolute to pay the amount claimed by the referee for his compensation, was erroneous, and to that extent must be, and is, reversed and set aside. Further proceedings upon that phase of the case may be had pursuant to the views expressed in this opinion. In other respects the questions arising on the petition for a review of said order are left open and undetermined.

Orders accordingly may be prepared, unless the parties interested speedily reach some settlement.